No. 2022-1765

# In the United States Court of Appeals For the Federal Circuit

VOLVO PENTA OF THE AMERICAS, LLC,
*Appellant*

v.

BRUNSWICK CORPORATION,
*Appellee*

On Appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board in No. IPR2020-01512

## BRIEF OF APPELLEE

Jason C. White
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1775
jason.white@morganlewis.com

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188
william.peterson@morganlewis.com

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5095
julie.goldemberg@morganlewis.com

***Counsel for Appellee Brunswick Corporation***

## REPRESENTATIVE CLAIM AT ISSUE

Claim 1 of U.S. Patent No. 9,630,692 provides:

1. A steerable tractor-type drive for a boat, comprising:

   a drive support mountable to a stern of the boat;

   a drive housing pivotally attached to the support about a steering axis, the drive housing having a vertical drive shaft connected to drive a propeller shaft, the propeller shaft extending from a forward end of the drive housing;

   at least one pulling propeller mounted to the propeller shaft,

   wherein the steering axis is offset forward of the vertical drive shaft.

# CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Numbers** | 2022-1765 |
| **Short Case Caption** | *Volvo Penta of Americas, LLC v. Brunswick Corp.* |
| **Filing Party/Entity** | Appellee/Brunswick Corporation |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Appellee*
*Brunswick Corporation*

Dated: November 21, 2022

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Brunswick Corporation | Not Applicable | FMR LLC (and certain of its affiliates) |
| Brunswick Corporation | Not Applicable | T. Rowe Price Associates, Inc. |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Dion M. Bregman<br><br>(Morgan, Lewis & Bockius LLP) | James J. Kritsas<br><br>(Morgan, Lewis & Bockius LLP) | Alexander B. Stein<br><br>(Morgan, Lewis & Bockius LLP) |
| Ka-Lo Yeh, Ph.D.<br><br>(Morgan, Lewis & Bockius LLP) | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

## TABLE OF CONTENTS

**Page**

Representative Claim at Issue ........................................ i

Certificate of Interest ........................................ i

Table of Contents ........................................ iii

Table of Authorities ........................................ vii

Statement of Related Cases ........................................ 1

Statement of the Issues ........................................ 2

Introduction ........................................ 3

Statement of the Case ........................................ 4

Summary of the Argument ........................................ 15

Argument ........................................ 18

I. Substantial Evidence Supports the Board's Finding That a Skilled Artisan Would Have Been Motivated to Combine Brandt and Kiekhaefer ........................................ 18

A. Substantial evidence supports the Board's finding that Brandt and Kiekhaefer are reasonably pertinent to the claimed invention. ........................................ 19

B. Substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine Brandt and Kiekhaefer to increase speed and efficiency. ........................................ 19

1. Substantial evidence supports the Board's finding that increased efficiency and speed are desirable. ........................................ 20

## TABLE OF CONTENTS
(continued)

**Page**


2. Substantial evidence supports the Board's finding that skilled artisans would have recognized that modifying Brandt's stern drive to have Kiekhaefer's pulling-propeller arrangement would increase Brandt's speed and efficiency. .......... 21

a. Volvo shows no error in the Board's finding that Mr. Sweet testified regarding Volvo's corporate knowledge. .......... 23

b. Volvo's complaints about "generic motivation" are meritless. .......... 24

c. Volvo's arguments about "racing boats" are unpreserved and meritless. .......... 25

d. Volvo's assertion that the claims do not cover outboard motors is irrelevant. .......... 27

e. Volvo's argument that pulling-drives are not the only way of achieving speed and efficiency is irrelevant. .......... 28

3. The Board properly credited Brunswick's expert testimony. .......... 29

C. The Board properly rejected the mere age of the references as persuasive of the nonobviousness of the combination. .......... 30

D. Substantial evidence supports the Board's finding that a skilled artisan would have had a reasonable expectation of success in modifying Brand's stern drive to have Kiekhaefer's pulling-propeller arrangement. .......... 32

1. Substantial evidence supports the Board's finding that the necessary minor modifications "are within the level of ordinary skill in the art." .......... 32

## TABLE OF CONTENTS
(continued)

**Page**


2. Brunswick's proof-of-concept drive confirmed the simplicity of the modifications. ....37

E. Volvo has no basis for its accusation that the Board's findings were "preordained." ....40

II. Substantial Evidence Supports the Board's Analysis of Secondary Considerations. ....41

A. Substantial evidence supports the Board's findings regarding a lack of nexus. ....41

1. Substantial evidence supports the Board's finding that Volvo was not entitled to a presumption of nexus. ....41

a. Substantial evidence supports the Board's finding that Volvo failed to satisfy its burden to prove coextensiveness. ....42

b. Although it is unnecessary to the Board's decision, substantial evidence supports the finding that the Forward Drive is not coextensive with the '692 patent. ....44

c. Volvo's reliance on *Oren Technologies* is misplaced. ....45

2. Substantial evidence supports the Board's finding that Volvo failed to prove nexus without the presumption. ....46

B. Substantial evidence supports the Board's weighing of the secondary considerations evidence. ....49

1. The Board adequately explained its analysis of secondary considerations. ....49

# TABLE OF CONTENTS
(continued)

**Page**


2. Volvo fails to show any error in the Board's analysis of secondary considerations....................50

III. In The Alternative, This Court Should Correct the Board's Claim Construction and Remand. ....................54

A. The Board erred in construing the claims as limited to stern drives. ....................54

B. This Court should vacate the denial of Ground 1 and Ground 2 remand for the Board to consider outstanding issues in view of the proper construction. ....................60

Conclusion & Prayer for Relief ....................62

Certificate of Compliance with Rule 32(a)....................63

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ActiveVideo Networks, Inc. v. Verizon Comm'n, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................24, 25

*Alcon Res. Ltd. v. Apotex, Inc.*,
687 F.3d 1362 (Fed. Cir. 2012) ....................20, 21

*ALZA Corp. v. Andrx Pharm., LLC*,
603 F.3d 935 (Fed. Cir. 2010) ....................23

*Apple Inc. v. Samsung Elecs. Co.*,
839 F.3d 1034 (Fed. Cir. 2016) ....................52

*Application of Lettvin*,
339 F.2d 249 (C.C.P.A. 1964) ....................24

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) ....................49

*Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*,
119 F.3d 953 (Fed. Cir. 1997) ....................31

*Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*,
752 F.3d 967 (Fed. Cir. 2014) ....................50, 53

*Broadcom Corp. v. Emulex Corp.*,
732 F.3d 1325 (Fed. Cir. 2013) ....................25

*Broadcom Corp. v. Int'l Trade Comm'n*,
28 F.4th 240 (Fed. Cir. 2022) ....................24

*ClassCo, Inc. v. Apple, Inc.*,
838 F.3d 1214 (Fed. Cir. 2016) ....................50

*D Three Enters., LLC v. SunModo Corp.*,
890 F.3d 1042 (Fed. Cir. 2018) ....................57

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ethicon LLC v. Intuitive Surgical, Inc.*,
No. 2021-1995, 2022 WL 1613188 (Fed. Cir. May 23, 2022)....................32, 33

*Fleming v. Cirrus Design Corp.*,
28 F.4th 1214 (Fed. Cir. 2022) ....................................................................50

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ...................................................42, 44, 45, 46

*Game & Tech. Co. v. Wargaming Grp. Ltd.*,
942 F.3d 1343 (Fed. Cir. 2019) ....................................................................18

*Heidelberger Druckmaschinen AG v. Hantscho Com. Prod., Inc.*,
21 F.3d 1068 (Fed. Cir. 1994) ......................................................................22

*In re Fulton*,
391 F.3d 1195 (Fed. Cir. 2004) ....................................................................28

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ......................................................................26

*In re Huang*,
100 F.3d 135 (Fed. Cir. 1996) ....................................................................8, 46

*In re Kahn*,
441 F.3d 977 (Fed. Cir. 2006) ......................................................................53

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................................................................49

*In re Schwemberger*,
410 F. App'x 298 (Fed. Cir. 2010) ................................................................33

*In re Wright*,
569 F.2d 1124 (C.C.P.A. 1977) ....................................................................30

*Indivior Inc. v. Dr. Reddy's Labs., S.A.*,
930 F.3d 1325 (Fed. Cir. 2019) ....................................................................50

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008) ....................25

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 784 (Fed. Cir. 2021) ....................25

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004) ....................16, 31, 32

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................20, 21, 27

*Leo Pharm. Prods., Ltd. v. Rea*,
726 F.3d 1346 (Fed. Cir. 2013) ....................31

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) ....................57, 58

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997) ....................18

*Oren Techs., LLC v. Proppant Express Invs. LLC*,
No. 2019-1778, 2021 WL 3120819 (Fed. Cir. July 23, 2021) ....................45, 46

*Polaris Indus., Inc. v. Arctic Cat, Inc.*,
882 F.3d 1056 (Fed. Cir. 2018) ....................42

*Prihma Tek II, L.L.C. v. Polypap, S.A.R.L.*,
412 F.3d 1284 (Fed. Cir. 2005) ....................57

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*,
75 F.3d 1568 (Fed. Cir. 1996) ....................52

*Profectus Tech. LLC v. Huawei Techs. Co.*,
823 F.3d 1375 (Fed. Cir. 2016) ....................59

*Rothman v. Target Corp.*,
556 F.3d 1310 (Fed. Cir. 2009) ....................18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th (Fed. Cir. 2021) ....................59

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ....................57

*Tokai Corp. v. Easton Enters., Inc.*,
632 F.3d 1358 (Fed. Cir. 2011) ....................33

**STATUTES**

35 U.S.C. § 103 ....................27

**RULES**

Fed. Cir. R. 47.5(b) ....................1

## STATEMENT OF RELATED CASES

No appeal in or from the same proceeding in the Patent and Trial Appeal Board was previously before this or any other appellate court. Under Fed. Cir. R. 47.5(b), the Court's decision in this appeal may affect the following judicial matter, which is presently stayed: *Volvo of the Americas, LLC v. Brunswick Corporation*, No. 1:20-cv-01678-GBW (D. Del. 2020).

## STATEMENT OF THE ISSUES

1. Whether substantial evidence supports the Board's finding that a skilled artisan would have a motivation to combine the pulling-propeller arrangement of Kiekhaefer and the stern drive of Brandt with a reasonable expectation of success.

2. Whether substantial evidence supports the Board's findings that Volvo was not entitled to a presumption of nexus and failed to carry its burden to demonstrate nexus.

3. In the alternative, whether substantial evidence supports the Board's finding that Volvo's evidence of secondary considerations was outweighed by the strong evidence of obviousness.

4. In the alternative, whether the Board erred in construing the word "drive" in the claims to be limited to "stern drives" and thus erred in rejecting the other grounds.

## INTRODUCTION

This appeal concerns a straightforward combination of two well-known features in the mechanical arts for marine propulsion drives: a "pulling-type drive" from one reference and a "stern drive" from another. The prior art provides motivation to combine the two, explaining that pulling-type drives are "more efficient and capable of higher speeds." Appx43 (quoting Appx1643).

In a thorough and well-reasoned opinion, the Board weighed the evidence presented by the parties and found that skilled artisans would be motivated to combine the pulling-propeller arrangement with the stern drive to achieve greater speed and efficiency, Appx63; that the minor modifications necessary to combine (and even to optimize) the references "were within the scope of the knowledge of one of ordinary skill in the art," Appx56; that Volvo failed to demonstrate a nexus between its evidence of secondary considerations and the claims, Appx65-72; and that even if nexus had been established, the strong evidence of obviousness outweighs the objective evidence of nonobviousness, Appx88.

Particularly in light of the highly deferential standard of review, Volvo fails to demonstrate any error in these factual findings, which are all supported by substantial evidence. The judgment below should be affirmed.

## STATEMENT OF THE CASE

The patent at issue, No. 9,630,692, concerns "marine drives," propulsion systems for boats. Appx375 at 1:6-9. As the patent explains, marine drives can be classified as either "pushing-type" or "pulling-type" (also known as "tractor-type"):

> Pushing-type drives generally rely upon propellers facing rearward relative to the boat and generating propulsive force that pushes the boat through the water.
>
> Tractor-type drives generally rely upon one or more forward, bow-facing propellers that produce propulsive force to pull the boat through the water. Tractor-type drives may also be referred to as pulling-type drives.

Appx375 at 1:23-29 (paragraph break added). A pulling-type drive has a "pulling-propeller arrangement." Appx44.

Both pushing- and pulling- type drives have been well known for decades. A seventy-year-old patent, U.S. Patent No. 2,616,387 to Kiekhaefer ("Kiekhaefer") illustrates a pushing-type in Figure 1 and a pulling-type in Figure 2:




App1641; *see also* Appx1641-1644.

As Kiekhaefer explains, each propeller placement has different advantages. In a pushing-type drive, "the propeller is protected" from being fouled by debris in its path because it is behind the lower housing of the drive, which protects it. Appx1643 at 1:10. Pulling-type drives, on the other hand, are "more efficient and capable of higher speeds." Appx1643.

Marine drives, the '692 Patent explains, can also be classified according to the placement of the engine and the drive unit:

- In an inboard drive, the engine and transmission (or drive) are mounted in the hull and a propeller shaft extends through the bottom of the hull.
- In an outboard drive, the propeller drive and engine are generally configured as a unit attached to and located outside the hull.
- Inboard/outboard drives, also referred to as stern drives, have an engine mounted in the hull connected to a drive unit mounted outside of the hull, typically on the stern.

Appx375 at 1:14-21 (bullets and paragraph breaks added). All three types of drives have been known for decades. *See, e.g.*, Appx1645 (U.S. Patent No. 4,840,136 (June 20, 1989) ("Brandt")).

After Appellee Brunswick Corporation filed the underlying *inter partes* reviews (described in more detail below) and launched a boat combining two well-known aspects of the prior art—Brunswick's existing stern drive with a pulling-propeller arrangement of the prior art—Appellant Volvo Penta of the Americas, LLC sued Brunswick in the District of Delaware, accusing it of infringing the '692 Patent.

***Brunswick Petitions for Inter Partes Review***

In September 2020, Brunswick petitioned the Board for inter parties review of the ’692 Patent. Only two of the asserted grounds are relevant on appeal.[1]

The first relevant ground of unpatentability is that most of the claims (1-3, 11-13, 15, and 18), are anticipated by Kiekhaefer, a 1946 patent that teaches a drive that can be changed from pushing-type to pulling-type. Appx392.

The second relevant ground is that all claims (1-18) are obvious in light of the combination of Brandt (which teaches stern drives) with Kiekhaefer (which teaches a pulling-type drive). Appx392. The petition illustrates how the lower unit of Brandt could be reversed to combine a stern drive with a pulling-propeller arrangement:




Brandt, Ex.1005, Fig. 1




Brandt-Kiekhaefer Combination

Appx444; Appx446.

---

[1] Claims 4 and 7 require two “counter-rotating” propellers. Appx377 at 6:1, 14. In additional grounds, Brunswick relied on “Stechauner” (U.S. Patent No. 1,813,552 to Stechauner (April 2, 1930)) to teach these propellers. Appx118. Volvo Penta does not address these claims separately on appeal.

The Board instituted review on all grounds. Appx498.

***Volvo's Patent Owner's Response***

In its Patent Owner's Response, Volvo first argued that the claims—which refer only to a "drive" generally—"are limited to specific improvements to a stern drive . . . or to a boat having a stern drive," Appx585, and do not include outboard drives, like that shown in Kiekhaefer.

According to Volvo, a skilled artisan would understand the phrases "drive support mountable to a stern of the boat" and "drive housing pivotally attached to the support about a steering axis" to "limi[t] the claim[s] to a drive that is a stern drive." Appx586.

Based on Volvo's proposed claim construction, Volvo argued that Kiekhaefer did not anticipate the claims: "Kiekhaefer describes only an outboard motor, not a stern drive." Appx594 (capitalization modified); *see also* Appx595 ("Kiekhaefer does not describe or suggest the claimed stern drives or boats including stern drives.").

With respect to the combination of Brandt and Kiekhaefer, Volvo disputed the motivation to combine the references. Appx611-612. Volvo also challenged the technical feasibility of the combination, arguing that modifying Brandt in view of Kiekhaefer would require significant modifications. Appx612-613.

Although Volvo relied on evidence of secondary considerations, it provided only minimal argument about "nexus." Here, for example, is its full argument regarding the presumption of nexus:

> Volvo Penta's Forward Drive is a commercial embodiment of the '692 Patent and coextensive with the claims. Ex. 2027, ¶ 51 [Appx4040-4041]. The design of the Forward Drive has not fundamentally changed since its launch in 2015. Ex. 2029, ¶ 9 [Appx4493]. The presumption of nexus thus applies to the objective indicia associated with the Forward Drive. The Bravo Four S also embodies the claimed features of the '692 Patent and is coextensive with them. Ex. 2027, ¶ 119-120 [Appx4086-4087].

Appx625-626. And here is Volvo's entire argument regarding nexus independent of the presumption:

> Further, the secondary considerations here are the "direct result of the unique characteristics of the claimed invention." *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996). For example, Brunswick recognized that the success of Volvo's Forward Drive was tied directly to the claimed features, namely a steerable tractor type drive as recited in each of the challenged claims.

Appx626.

Volvo also filed a contingent motion to amend the claims, asking the Board to permit amendment of the claims (limiting them to a stern drive) in the event that the Board disagreed with Volvo's claim construction. Appx725.

***The Board Finds a Motivation to Combine and a Reasonable Expectation of Success***

In a thorough 118-page opinion, the Board carefully considered the parties' arguments and the evidence, ultimate finding claims 1-18 unpatentable as obvious in light of the combination of Brandt and Kiekhaefer. Appx118.

The Board first adopted Volvo's proposed claim construction, holding that "the independent claims are limited to improvements involving stern drives, and do not encompass, for example, improvements involving outboard propulsion systems." Appx20. For this reason, the Board rejected Brunswick's grounds reliant on Kiekhaefer anticipating the claims. Appx25 ("Kiekhaefer only discloses improvements involving outboard propulsion systems.").

When it turned to the combination of Brandt and Kiekhaefer, the Board first recognized that "Brandt and Kiekhaefer are at least reasonably pertinent to the claimed invention." Appx42. "[W]e find that Brandt and Kiekhaefer are reasonably pertinent to the problem identified in the '692 patent of providing a marine drive that is more efficient with improved performance." Appx42-43 (internal quotation marks omitted).

The Board found that Kiekhaefer expressly taught a motivation to combine the references: "[T]he motivation stems from an express statement in the prior art (i.e., Kiekhaefer) that changing to a forward-facing propeller arrangement is one way to provide a system that is 'more efficient and capable of higher speeds.'" Appx46

(quoting Appx1643); *see also* Appx45 (noting "Kiekhaefer's express teaching that changing to a forward-facing propeller arrangement *is one way* to provide a configuration that is 'more efficient and capable of higher speeds'"); Appx44 ("Patent Owner acknowledges . . . that a forward-facing (pulling-type) propeller arrangement *provides* higher speeds or more efficiency[.]").

The Board credited the testimony of Brunswick's expert Robert Schofield that "the teachings of Kiekhaefer as to outboard motors—including the benefits of increased speed and efficiency—would have been understood to apply even to stern drives." Appx47. The Board also cited the testimony of Volvo's business manager Andrew Sweet that Volvo "knew . . . that putting the propel[e]rs on the front of the stern drive created quite a bit of efficiency." Appx48;[2] *see also id.* ("[T]he specific reason for increased efficiency mentioned by Mr. Sweet—the absence of structure to block the flow of water to the propellers—would apply whether an outboard motor *or* a stern drive is configured with forward-facing propellers." (internal citation omitted)).

The Board also considered and rejected Volvo's arguments about the modifications that purportedly would be necessary to combine the references. As

---

[2] The Board found that this testimony reflected Volvo's corporate knowledge and not Mr. Sweet's personal knowledge. *See* Appx47-48 ("[W]e view his statements—as to what 'we' knew with regard to creating efficiency in stern drives—as indicating more than merely his *personal* knowledge on this issue.").

an initial matter, the Board explained, many of the modifications suggested by Brunswick's expert were not "*required*." Appx55. "For example, . . . the claimed invention *does not* specify a location for exhaust pipes." Appx55 (internal citations omitted). These modifications "were ones that one of ordinary skill in the art *might also consider* when reversing the Brandt lower unit, but that were not required." Appx55 (internal citations omitted); *see also* ("[T]hese changes are only 'necessary to *make it optimal*' and . . . are 'fairly minimal.'" Appx56 (quoting Appx4379)).

In any event, the Board found, "all of the listed changes—those needed to arrive at the claimed invention and those merely to optimize the modified device—were within the scope of the knowledge of one of ordinary skill in the art." Appx56. Although there were technical considerations in performing the modification, Volvo "d[id] not adequately explain why addressing those considerations in the context of the proposed modification would be *outside* the abilities of one of ordinary skill in the art." Appx57.

After rejecting Volvo's other arguments, Appx57-63, the Board found "that the articulated reasoning is supported by rational underpinning, and that there would have been a reasonable expectation of success" in the combination. Appx63-64.

***The Board Finds that Volvo Failed to Carry Its Burden Regarding Nexus***

The Board next turned to Volvo's "objective evidence of nonobviousness." Appx64. It began by considering whether Volvo carried its burden to prove a nexus between this evidence and the claimed features.

The Board first found that Volvo "has not established a presumption of nexus." Appx66. The Board noted Volvo's limited briefing on the issue (quoted above) and recognized that the sole evidence cited by Volvo—its expert's declaration—"addresses why the Forward Drive embodies the claims, but does not even mention, let alone provide testimony supporting Patent Owner's conclusion regarding, the *separate* coextensiveness requirement." Appx66 (citing Appx4040-4041 ¶ 51); *see also* Appx67-68 (same for Bravo Four S, Brunswick's product).

As to nexus in the absence of the presumption, the Board again noted the very limited argument (quoted above) by Volvo. Appx68; *see also* Appx71 (referring to "Patent Owner's two-sentence discussion of the issue"). The Board explained that this argument "does not actually identify the 'unique characteristics' of the claimed combination—i.e., the 'merits of the claimed invention.'" Appx71 (internal citation omitted). As a result, the Board found, Volvo "has not established a nexus for either the Forward Drive or the Bravo 4S." Appx72.

***The Board Finds, in the Alternative, that Volvo's Objective Evidence Did Not Outweigh the Strong Evidence of Obviousness***

Although the failure to prove nexus was dispositive of the secondary considerations, the Board also provided an alternative analysis: "to present a full discussion of the issues, we discuss the objective indicia evidence below as if Patent Owner *had* established nexus." Appx72.

Although Brunswick explained that its analysis of Volvo's drive was a routine and commonplace "benchmarking" used by manufacturers to evaluate the performance of competitors' products, Appx75-76, the Board found "some weight of nonobviousness based on copying." Appx78. The Board also accorded "some weight of nonobviousness" to evidence of commercial success, Appx81, and evidence of industry praise. Appx83.

The Board afforded "very little weight" to Volvo's alleged evidence of skepticism, Appx84-85, and "very little weight" to the alleged evidence of long-felt need. Appx86; *see also id.* ("We afford objective evidence of this indicium very little weight."). The Board rejected Volvo's argument that passage of time, alone, weighed against obviousness, Appx87, and "afford[ed] objective evidence of [failure of others] very little weight." Appx88.

The Board then considered all of the evidence together and found that even if Volvo had shown a nexus, "[Brunswick's] strong evidence of obviousness outweighs [Volvo's] objective evidence of nonobviousness." Appx88.

The Board separately considered each remaining claim and found each obvious in light of the combination of Brandt and Kiekhaefer. Appx90-115. As a result, the Board found that Brunswick "has proven by a preponderance of the evidence that claims 1-18 are unpatentable." Appx117.

This appeal followed. Appx5629.

## SUMMARY OF THE ARGUMENT

Volvo raises a variety of fact-bound challenges to the Board's findings, but this Court's review is deferential, and Volvo fails to show that any of the Board's findings are not supported by substantial evidence.

The Board's obviousness finding rests on a mechanical combination of two features: the pulling-propeller arrangement taught by Kiekhaefer and the stern drive taught by Brandt. The Board found that speed and efficiency are desirable characteristics in boats, Appx46, and Kiekhaefer teaches that pulling-propeller arrangements are "more efficient and capable of higher speeds." Appx1643. The Board thus found that skilled artisans would be motivated to combine Kiekhaefer's pulling-propeller arrangement with Brandt's stern drive to achieve increased efficiency and speed. Appx63.

None of Volvo's various arguments casts doubt on this analysis. It is irrelevant that speed is not the only characteristic by which boats are evaluated, Volvo Br. 18; that pulling-propeller arrangements are not the only means of achieving speed and efficiency, Volvo Br. 20-22; and that Volvo may have had a different motivation in making the combination, Volvo Br. 26. Volvo's argument that Kiekhaefer is limited to racing boats, Volvo Br. 18, is both unpreserved and misreads the reference. And this Court has expressly rejected Volvo's argument that

the age of references, standing alone, weighs against obviousness. *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

When it discusses expectation of success, Volvo disregards the record and this Court's standard of review. Volvo asserts, without citation, that combining Brandt and Kiekhaefer requires "dozens of modification[s]" of "enormous complexity." Volvo Br. 28. But the Board found that most of these modifications were to optimize, not practice, the claimed invention, and that the remaining modifications (that are straightforward and mechanical) were well within the ability of a skilled artisan. Appx59-60. Volvo shows no error in the Board's finding.

And Volvo misstates the record when it suggests that Brunswick attempted and "failed" the proposed modification. Volvo Br. 36. In truth, Brunswick successfully assembled a proof-of-concept drive that fully proved how simply Volvo's commercial implementation of Brandt could be modified to have a pulling-propeller arrangement as taught by Kiekhaefer. *See* Appx787-789; Appx2634.

With respect to secondary considerations, Volvo provided only minimal briefing on nexus. The Board pointed out that the evidence Volvo relied on to show coextensiveness—a requirement for a presumption of nexus—only addressed whether the products embody the claims, a separate requirement. Appx68 (discussing Appx4085-4086). On appeal, Volvo repeats the same assertion about the same evidence, without responding to the Board's analysis. Volvo Br. 55.

Nor does Volvo show any error in the Board's finding that it failed to show nexus in the absence of any presumption. Appx71-72.

The Board also found, in the alternative, that even if Volvo had shown nexus, "[Brunswick's] strong evidence of obviousness outweighs [Volvo's] objective evidence of nonobviousness." Appx88. The Board fully explained its decision, including the reasoning behind the relative weight that it accorded to each secondary consideration. Appx78-87. Volvo fails to show that the Board's determination is not supported by substantial evidence.

This Court should thus affirm the Board's finding that claims 1-18 are invalid as obvious in light of the combination of Kiekhaefer and Brandt.

In the alternative, if this Court reverses the Board's obviousness determination, it should reverse the Board's claim construction limiting "drive" in the '692 Patent to a stern drive. The independent claims use the term "drive" rather than the narrower term "stern drive," which is used in the specification and dependent claim 16. Based on this claim construction, this Court should vacate the Board's denial of Grounds 1 and 2 and remand to the Board for further proceedings.

## ARGUMENT

***Standard of Review***

This Court reviews the Board's factual findings for substantial evidence and its legal determinations de novo. *E.g.*, *Game & Tech. Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1348 (Fed. Cir. 2019). Obviousness is a question of law reviewed de novo, with any underlying fact findings reviewed for substantial evidence. *Id.* at 1351. The weight to be given to evidence of secondary considerations is a factual determination, *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009), which this Court reviews only for substantial evidence. *See also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997) ("In reaching an obviousness determination, a trial court may conclude that a patent claim is obvious, even in the light of strong objective evidence tending to show non-obviousness.").

### I. Substantial Evidence Supports the Board's Finding That a Skilled Artisan Would Have Been Motivated to Combine Brandt and Kiekhaefer.

Based on the evidence before it, the Board found that a skilled artisan would have had a motivation to modify the stern drive of Brandt to have the pulling-propeller arrangement taught by Kiekhaefer and would have had a reasonable expectation of success in doing so. Appx63-64. Volvo shows no error in the Board's findings, particularly given the deferential standard of review.

### A. Substantial evidence supports the Board's finding that Brandt and Kiekhaefer are reasonably pertinent to the claimed invention.

The Board first found that Brandt and Kiekhaefer—which both concern marine drives—"are at least reasonably pertinent to the claimed invention." Appx42. "Brandt and Kiekhaefer are reasonably pertinent to the problem identified in the '692 patent of providing a marine drive that is more efficient with improved performance." Appx42-43 (internal quotation marks omitted). Volvo does not challenge this finding on appeal.

### B. Substantial evidence supports the Board's finding that a skilled artisan would have been motivated to combine Brandt and Kiekhaefer to increase speed and efficiency.

The Board next found, primarily relying on Kiekhaefer's express teaching, that a skilled artisan would have been motivated to combine Kiekhaefer's pulling-propeller arrangement with Brandt's stern drive to achieve more efficiency and higher speeds. Appx43.

Volvo fails to show any error in this finding, and as the Board noted, Volvo's arguments—(1) that speed and efficiency are not the *only metric* by which marine drives are judged, Volvo Br. 18, and (2) that there are other means of achieving speed and efficiency, Volvo Br. 20-21—do nothing to undermine the Board's findings.

### 1. Substantial evidence supports the Board's finding that increased efficiency and speed are desirable.

The Board found that increased speed and efficiency are desirable characteristics in marine drives. Appx46. Volvo's expert acknowledged that "improved performance in terms of overall efficiency and/or greater attainable speed are generally desirable attributes of any type of propulsion system." Appx45 (quoting Appx4179 at ¶ 92). And Brunswick's expert confirmed that "[f]aster boats were also commercially desirable at the time." Appx1408 at ¶ 114; *see also* Appx46 (citing this portion of the expert declaration).

On appeal, Volvo does not deny that efficiency and speed are desirable characteristics of boats (and marine drives). Instead, Volvo repeats its argument that speed is not the *only metric* by which recreational boats are judged. Volvo Br. 18. But this argument, as the Board explained, does nothing to undermine the Board's conclusion that "speed is *a metric* by which boats are judged." Appx46 (explaining that Volvo did not contest this point).

In addition, the Board correctly held that even if Volvo had different goals when it developed the invention, the reason that Volvo, subjectively, made the combination is irrelevant. *See* Appx48-49 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 420 (2007); *Alcon Res. Ltd. v. Apotex, Inc.*, 687 F.3d 1362, 1368 (Fed. Cir. 2012)). The Supreme Court held that "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason

for combining the elements in the manner claimed." *KSR*, 550 U.S. at 420. "[T]he motivation to modify a prior art reference to arrive at the claimed invention need not be the same motivation that the patentee had." *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1368 (Fed. Cir. 2012).

### 2. Substantial evidence supports the Board's finding that skilled artisans would have recognized that modifying Brandt's stern drive to have Kiekhaefer's pulling-propeller arrangement would increase Brandt's speed and efficiency.

As the Board recognized, Kiekhaefer expressly teaches that pulling-drives are "more efficient and capable of higher speeds." Appx43. The Board credited the testimony of Brunswick's expert that based on Kiekhaefer's teaching, a skilled artisan "who would have wanted to improve efficiency and increase the speed of Brandt's drive would have immediately considered modifying Brandt to use pulling-type/tractor-type propellers." Appx46.

Substantial evidence also supports the Board's finding that skilled artisans would recognize that Kiekhaefer's teachings regarding the speed and efficiency benefits of pulling-propeller arrangements apply to stern drives. Appx47. Brunswick's expert explained that the only difference between outboard drives (like Kiekhaefer) and stern drives (like Brandt) is the "the location of the engine": "While Brandt is directed to an inboard-outboard type drive and Kiekhaefer an outboard drive, the '692 patent admits the only appreciable difference between the two is the location of the engine." Appx1406. The location of the drive unit is identical: "Both

Brandt's inboard-outboard drive [i.e., stern drive] and Kiekhaefer's outboard drive utilize a propeller drive unit mounted on the stern outside of the boat." Appx1407.

Crediting this testimony, the Board found that "the teachings of Kiekhaefer as to outboard motors—including the benefits of increased speed and efficiency—would have been understood to apply even to stern drives, as in Brandt." Appx47. This is particularly true in light of the Board's (uncontroverted) finding that "Brandt and Kiekhaefer are analogous art." Appx47. For this reason, the Board, found that "a person of ordinary skill would have reasonably consulted . . . and applied their teachings in seeking a solution to the problem that the inventor was attempting to solve." Appx47 (quoting *Heidelberger Druckmaschinen AG v. Hantscho Com. Prod., Inc.*, 21 F.3d 1068, 1071 (Fed. Cir. 1994); omission in original).

In addition to the testimony of Brunswick's expert, the Board also credited the testimony of Andrew Sweet, Volvo's business manager, regarding Volvo's knowledge of pulling-drives. Appx48. When asked why Volvo "move[d] the propellers to the front," Mr. Sweet explained that Volvo "knew from the IPS product that we have, that we had brought to market in 2005, that putting the propellers on the front of the stern drive created quite a bit of efficiency, in that there was nothing to block the flow of water to the propellers." Appx1813. This "reason for increased efficiency," the Board recognized, would apply both to outboard motors and stern drives. Appx48.

In fact, the Board understood Volvo as conceding that a pulling-propeller arrangement was one means of achieving speed and efficiency. *See* Appx44 ("Patent Owner acknowledges (in the statement at the end of the prior paragraph) that a forward-facing (pulling-type) propeller arrangement *provides* higher speeds or more efficiency, but merely contends there are also *other ways*.").

Volvo fails to demonstrate any error in the Board's finding, which is supported by substantial evidence.

#### a. Volvo shows no error in the Board's finding that Mr. Sweet testified regarding Volvo's corporate knowledge.

Volvo complains that Mr. Sweet is not a person of ordinary skill in the art. Volvo Br. 23. But the Board did not interpret him as testifying about his own personal knowledge; the Board understood his testimony to concern Volvo's corporate knowledge: "[W]e view his statements—as to what 'we' knew with regard to creating efficiency in stern drives—as indicating more than merely his personal knowledge on this issue." Appx47-48. Volvo identifies no error in the Board's findings about the meaning of Mr. Sweet's testimony. *Cf. ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 942 (Fed. Cir. 2010) ("[The witnesses'] level of skill in the art does not affect their knowledge relating to ALZA's difficulties in creating a non-osmotic dosage form as claimed[.]").

And it hardly supports Volvo's position if the efficiency gains from pulling-drives are so apparent that they can be recognized even by those without skill in the art. *Cf. Application of Lettvin*, 339 F.2d 249, 251 (C.C.P.A. 1964) (noting that "it would be obvious even to one not skilled in the art" to use an insoluble material "where solubility of the material is not desired").

In any event, the Board noted Mr. Sweet's testimony only as a supplement to the express teachings of Kiekhaefer and the testimony of Mr. Schofield. Appx47-48. The Board's reliance on Mr. Sweet's testimony is not enough to disturb the outcome.

#### b. Volvo's complaints about "generic motivation" are meritless.

Volvo argues that a "generic motivation is insufficient to support an obviousness conclusion." Volvo Br. 18-19.

This argument is incorrect. This Court has never rejected obviousness arguments based on a "generic motivation." *See Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240, 251 (Fed. Cir. 2022) (affirming the Board's holding that claims were obvious despite an allegedly "generic motivation" to combine them).

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, on which Volvo relies (at 19), did not reject a *motivation* as "generic" but held that an expert's *testimony*—which "b[ore] no relation to any specific combination of prior art elements" and "fail[ed] to explain why a person of ordinary skill in the art would have combined elements from specific references"—was insufficient to support a

determination of obviousness. 694 F.3d 1312, 1328 (Fed. Cir. 2012); *see also id.* (Expert: "The motivation to combine would be because you wanted to build something better."). This Court recently reiterated this distinction in *Intel Corp. v. Qualcomm Inc.*, explaining that a motivation "is not inherently suspect merely because it's generic in the sense of having broad applicability or appeal" but only problematic when supported by "conclusory" expert testimony. 21 F.4th 784, 797 (Fed. Cir. 2021) ("Intel's expert indicated precisely how and why a skilled artisan would have combined the references.").

Here, as in *Intel*, the Board's findings focused on specific evidence—including the express teaching of Kiekhaefer and the testimony of Mr. Schofield—that skilled artisans would expect modifying Brandt's stern drive to include specific features from Kiekhaefer (a pulling-propeller arrangement) to increase the speed and efficiency of Brandt's stern drive.[3] Volvo's complaints are meritless.

#### c. Volvo's arguments about "racing boats" are unpreserved and meritless.

For the first time on appeal, Volvo argues that Kiekhaefer is limited to "racing boats." Volvo Br. 18. The argument is forfeited because it was never developed

---

[3] Nor do Volvo's other cases demonstrate any error. Unlike in *Innogenetics, N.V. v. Abbott Laboratories*, the Board found "motivation to combine particular references to reach the particular claimed [composition]." 512 F.3d 1363, 1373 (Fed. Cir. 2008); Appx63-64. And unlike in *Broadcom Corp. v. Emulex Corp.*, the Board found a plausible rationale as to why the prior art references would have worked together. 732 F.3d 1325, 1334 (Fed. Cir. 2013); Appx58-59.

before the Board. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("[A] position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). The word "racing" appears nowhere in Volvo's Patent Owner's Response or its Sur-Reply.

Even if the argument were preserved, it is meritless. To the extent that Volvo now suggests that speed and efficiency are desirable characteristics only in racing boats, ample evidence—including the testimony of Volvo's expert—supports the Board's findings that speed and efficiency are generally desirable in marine drives. *See, e.g.*, Appx45 ("[I]mproved performance in terms of overall efficiency and/or greater attainable speed are generally desirable attributes of any type of propulsion system." (quoting Appx4179)).

To the extent that Volvo suggests that Kiekhaefer teaches how to improve the speed and efficiency only of racing boats, it misreads the reference. Kiekhaefer states, broadly and without limitation, that pulling-drives are "more efficient and capable of higher speeds." Appx1643; *see also* Appx1644 ("By disposing the propeller forwardly of gear case 11 greater efficiency and speed is obtained[.]"). Figure 2, a racing boat, is merely one example of a boat in which efficiency and speed "would be desired." Appx1644; Appx1641.

**d. Volvo's assertion that the claims do not cover outboard motors is irrelevant.**

Volvo also makes the puzzling assertion that because the claims do not cover outboard motors, any outboard motor prior art is irrelevant to an obviousness analysis. *See* Volvo Br. 17 ("Both of these conclusions cannot be correct: that the claims do not encompass improvements involving outboard propulsion systems and yet it would be obvious to modify a stern drive using improvements to an outboard propulsion system.").

This argument conflicts with black-letter obviousness principles, which recognize that even work from "a different field" can render patents obvious. *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007) ("When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one."). Prior art need not anticipate the claims in order to be considered in the obviousness analysis. *See* 35 U.S.C. § 103. Even if the claims do not encompass outboard motors, the claims are obvious because a skilled artisan would be motivated to modify the stern drive of Brandt with the pulling-propeller arrangement of Kiekhaefer (which it taught in the context of outboard motors).

#### e. Volvo's argument that pulling-drives are not the only way of achieving speed and efficiency is irrelevant.

Finally, Volvo argues that using a pulling-drive is not the *only means* of increasing the speed and efficiency of marine drives. *See* Volvo Br. 20-22 ("Brunswick's expert also identified other ways in which he personally improved the efficiency and speed of a drive.").

As the Board correctly recognized, this assertion is irrelevant to the obviousness analysis. "Even if changing to a forward-facing propeller arrangement is 'not the only way to achieve higher speeds and/or greater efficiency on a boat'—i.e., there are *other* factors and variables aside from propeller orientation that may influence the speed and efficiency of a boat—that does not undermine Kiekhaefer's express teaching that changing to a forward-facing propeller arrangement *is one way* to provide a configuration that is "more efficient and capable of higher speeds." Appx44 (internal citation omitted).

No authority supports Volvo's suggestion that a motivation to combine requires the combination to be the exclusive means of achieving the desired benefit. To the contrary, this Court "does not require that a particular combination must be the preferred, or the most desirable, combination described in the prior art in order to provide motivation for the current invention." *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004). Even if a pulling-propeller arrangement were not the only (or even

the most desirable) means of improving speed and efficiency, the motivation to combine would still exist.

### 3. The Board properly credited Brunswick's expert testimony.

Volvo also complains about the Board crediting the testimony of Brunswick's expert, asserting that it "adds nothing" and "is not substantial evidence." Volvo Br. 22-23.

Brunswick's expert, Mr. Schofield, is an extremely well-qualified marine engineer. *See* Appx1355 ("I am a practicing professional naval architect and marine engineer with 44 years of experience in design and engineering of high speed boats and yachts, ships and naval craft."); Appx1356 ("I have personally built large numbers of boats, outboard, inboard, and sterndrive propelled, and as the proprietor of Schofield Boatworks LLC am presently building a 33 foot high speed outboard propelled ocean fishing catamaran."); *see also generally* Appx1355-1358.

Based on his extensive experience in the field, he opined, from "the viewpoint of a person of ordinary skill in the art at the time of the earliest claimed priority date of the '692 Patent" that "a PHOSITA would have been motivated to modify the Brandt drive in view of Kiekhaefer to utilize pulling-type/tractor-type propellers[.]" Appx1358; Appx1406. A skilled artisan would credit the teaching in Kiekhaefer "that pulling-type/tractor-type propellers are 'more efficient and capable of higher speeds.'" Appx1408 (quoting Appx1643). And based on this teaching, "A

PHOSITA who would have wanted to improve efficiency and increase the speed of Brandt's drive would have immediately considered modifying Brandt to use pulling-type/tractor-type propellers." Appx1408. "The combination would have been the obvious result of simply substituting one known element (tractor-type propeller) for another (pusher-type propeller) to obtain predictable results (a boat that would have been more efficient and faster, as explained by Kiekhaefer)." Appx1408.

This testimony, based on his unchallenged qualifications and experience in the field, was properly credited by the Board and constituted substantial evidence in support of the Board's decision.

### C. The Board properly rejected the mere age of the references as persuasive of the nonobviousness of the combination.

Before the Board, Volvo argued that the mere age of the references—standing alone—weighed against finding a motivation to combine. Appx63. Volvo repeats the arguments on appeal. Volvo Br. 24-26.

The Board correctly rejected this argument. As it noted, this Court's predecessor directly addressed the issue and held that "[t]he mere age of the references is not persuasive of the unobviousness of the combination of their teachings, absent evidence that, notwithstanding knowledge of the references, the art tried and failed to solve the problem." Appx63 (quoting *In re Wright*, 569 F.2d 1124, 1127 (C.C.P.A. 1977)).

In other words, Volvo's arguments about the age of the references are relevant only to the extent they concern secondary considerations of long-felt but unsolved need: "Absent a showing of long-felt need or the failure of others, the mere passage of time without the claimed invention is not evidence of nonobviousness." *Iron*, 392 F.3d at 1325; *see also Leo Pharm. Products, Ltd. v. Rea*, 726 F.3d 1346, 1359 (Fed. Cir. 2013) (discussing "[t]he length of the intervening time" as part of analyzing "long felt but unsolved need").

*Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997), on which Volvo relies (at 25 & n.2), is not to the contrary. There, this Court noted the length of intervening time as part of discussing "[t]he evidence that the combination was not viewed as technically feasible":

> No prior art showed or suggested the combination of a plastisol lure with salt, although the prior art was extensive as to the separate elements, and suggested including organic attractants in plastic lures. Instead, the prior art, and the experts, counselled against the Larew combination.

119 F.3d at 958, 957; *see also id.* at 957 ("The beliefs of those in the field at the time, including beliefs that the plastisol lure would lose its surface qualities, texture, and strength, as well as the manufacturing uncertainties, are the position from which the decisionmaker must view the invention.); *id.* at 958 ("FitzSimons' warning against adding plastic-insoluble ingredients to the plastisol was repeated by Dr.

Carver and Mr. Harville, and Mr. Larew was so advised long before this litigation arose.”).

No case holds that age, alone, is evidence of nonobviousness, and this Court has affirmatively held the opposite. *Iron Grip Barbell*, 392 F.3d at 1325. The Board correctly rejected Volvo’s argument.

### D. Substantial evidence supports the Board’s finding that a skilled artisan would have had a reasonable expectation of success in modifying Brand’s stern drive to have Kiekhaefer’s pulling-propeller arrangement.

Much of Volvo’s argument on appeal concerns the technical feasibility of the combination: whether a skilled artisan would have a reasonable expectation of success in modifying Brandt’s stern drive to have Kiekhaefer’s pulling-propeller arrangement. Volvo Br. 26-39.

The Board found that the minor modifications necessary to modify Brandt’s stern drive to have a pulling-propeller arrangement were well within the abilities of one of ordinary skill in the art. Appx59-60. Volvo fails to show that this finding was not supported by substantial evidence.

#### 1. Substantial evidence supports the Board’s finding that the necessary minor modifications “are within the level of ordinary skill in the art.”

Particularly in the mechanical arts, the need for skilled artisans to make routine modifications in combining references does not defeat a reasonable expectation of success. For example, in *Ethicon LLC v. Intuitive Surgical, Inc.*, this

Court affirmed the Board's finding that skilled artisans would have a reasonable expectation of success combining a "lockout mechanism" and a "surgical stapling instrument," despite the need for some modifications to fit pieces together:

> [T]he Board credited Dr. Knodel's testimony that a POSITA would have had a reasonable expectation of success in modifying the surgical stapling instrument of Green to include the lockout mechanism of Solyntjes. The Board acknowledged Ethicon's argument that the combination would require some modifications to fit pieces of the invention together. The Board relied, however, on Dr. Knodel's testimony that a POSITA would know how to account for "routine considerations" such as "location, positioning, and robustness of a locking mechanism, as a part of Green's instrument."

No. 2021-1995, 2022 WL 1613188, at *4 (Fed. Cir. May 23, 2022) (internal citations omitted); *see also Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1371-72 (Fed. Cir. 2011) (characterizing adapting "the safety mechanisms of the prior art cigarette lighters . . . to fit a utility lighter" as a predictable art, "even if it required some variation in the selection or arrangement of particular components"); *In re Schwemberger*, 410 F. App'x 298, 305 (Fed. Cir. 2010) (involving a combination that required moving a rod and noting no evidence "showing that this relatively minor design change would be outside the scope of ordinary skill").

Here, the Board found, based on expert testimony (and the absence of countervailing evidence), that any minor modifications necessary to modify Brand's stern drive to have a pulling-propeller arrangement, as taught by Kiekhaefer, were well within the level of ordinary skill in the art. Appx54-59.

As the Board noted, "[Brunswick] and Mr. Schofield provide[d] a lengthy discussion of the overall modification, with Mr. Schofield summarizing the proposed modification as follows: 'remove and reverse the lower portion of Brandt's drive and replace the pusher-propeller(s) with puller- or tractor-propeller(s), while also ensuring balanced steering forces as taught by Brandt, to produce the Brandt-Kiekhaefer combination.'" Appx54-55 (quoting App1412-1413). Mr. Schofield testified that the combination "would work simply with flipping the thing around," Appx55 (quoting Appx4379), but he also noted that a skilled artisan "would likely also have made some other minor modifications to Brandt's drive" "[t]o improve operation of the modified drive." Appx1414; *see also id.* ("[W]hile not required, a PHOSITA may choose to reverse or alter the shape of the leading edges of the lower housing for better hydrodynamics[.]"). The Board found that these minor modifications "were ones that one of ordinary skill in the art *might also* consider when reversing the Brandt lower unit, but that were not required." Appx55 (internal quotation marks omitted); *see also* Appx55 (explaining that "the claimed invention *does not* specify a location for exhaust pipes").

Far from "ignor[ing]" evidence regarding the proposed modifications, as Volvo suggests (at 26), the Board conducted a thorough review of the evidence. Appx54-59. The Board noted that many of the modifications "are not necessary, but merely proposed to optimize the proposed modification." Appx59. Brunswick's

expert testified that the modifications "are fairly easy design changes that anybody in the shop could do." Appx4379 at 138:1-2; *see also* Appx1408 ("simply substituting one known element (tractor-type propeller) for another (pusher-type propeller)").

The Board recognized that Volvo noted "several technical considerations" in reversing a propeller arrangement but found that Volvo "does not adequately explain why addressing those considerations in the context of the proposed modification would be *outside* the abilities of one of ordinary skill in the art." Appx57.

The Board recognized that the '692 Patent itself provided further support for its findings: "The finding that the listed changes are within the level of ordinary skill in the art is further supported by the fact that the '692 patent does not include details about many of the 'minor modifications,' such as the routing of cooling water (as confirmed by Dr. Winkel's testimony)." Appx58.

Volvo relied, as it does on appeal, on the alleged number of modifications as evidence of nonobviousness. Appx59. The Board first noted that "many of the listed changes are not necessary, but [are] merely proposed [by Brunswick's expert] to optimize the proposed modification." Appx59. The Board found that all of "the listed changes are within the level of skill in the art," Appx59, and thus saw no reason that the mere number of purported changes would preclude a finding of obviousness. The Board also found that these are routine modifications well within the ability of

skilled artisans, Appx57, and Volvo fails to show that this finding is not supported by substantial evidence. Nor would any modifications "impact the 'basic principles' under which Brandt operates." Appx61. And the Board found that "the Brandt drive *after* modification with Kiekhaefer continues to perform the stated purpose and function of Brandt." Appx61.

Volvo's brief fails to engage with the Board's analysis. Volvo Br. 26-36. It simply recites a purported list of modifications without discussing either their necessity or difficulty. For example, one change invoked in Volvo's brief—changes that Volvo characterizes as involving "enormous complexity," Volvo Br. 28—is "removal of fin structure." Volvo Br. 29; *see also* Volvo Br. 31 ("removing the cathodic protection fin between the propellers").

In testimony credited by the Board, Appx56, Mr. Schofield specifically testified that removing the fin merely "improve[s] operation of the modified drive." Appx1414. And the process is simply removing a screw: "This fin is easily removed by removing a screw that holds it in place." Appx1414.

The Board found, based on substantial evidence before it, that only a few modifications were necessary to combine Kiekhaefer and Brandt to arrive at the claimed invention and that these modifications "were within the scope of the knowledge of one of ordinary skill in the art." Appx56; *see also* Appx4376 at 135:13-16 (Schofield: "Minor modifications.· . . . [T]his reversal of the lower unit

was a fairly straight-forward thing, and these minor modifications are, in fact, that, minor modifications."). Volvo fails to show a lack of substantial evidence in these findings.

### 2. Brunswick's proof-of-concept drive confirmed the simplicity of the modifications.

The simplicity of modifying Brandt's stern drive to have a pulling-propeller arrangement, as taught by Kiekhaefer, was confirmed by a proof-of-concept experiment conducted by Brunswick. The Board did not rely on this evidence, and it was not necessary to the Board's decision. Appx62-63. But if the proof-of-concept drive[4] shows anything, it proves Brunswick's position. Volvo's assertion that Brunswick tried and "failed" to implement the proposed modification misstates the record. Volvo Br. 36-39.

Brunswick acquired a Volvo Duoprop drive—the same drive depicted in Brandt, Appx787 n.3—and (over the course of a morning) reversed the lower housing so that the propellers faced forward. Appx787. These photographs show the original drive (left) and the proof-of-concept drive (right):

[4] The term "Crusty Drive," unfortunately echoed by the Board, was a derogatory term invented by Volvo's attorney at a deposition. Appx4846 ("I may refer to it as the crusty drive because that is what it looks like to me.").




Appx788. Brunswick's experiment was entirely successful: "The modified drive operated as expected." Appx788. When the input shaft was turned, the propeller shaft turned:



Appx789. The record includes a video showing the successful operation of the proof-of-concept drive. Appx2643. Brunswick's experiment proved exactly what Brunswick intended to prove: rotating the housing was "trivial" and took "less than one working days' worth of hours for [a] drive technician." Appx2611.

On appeal, Volvo incorrectly states that Brunswick "failed" to "physically implement the modifications that [Brunswick] asserted were obvious." Volvo Br. 36. Volvo bases its assertion on the fact that Brunswick did not connect its proof-of-concept drive to an engine or finish manufacturing it into a completed drive that could be used on a boat. Volvo Br. 36-39. But Volvo's argument hardly shows a "failure." Brunswick never *tried* to complete the manufacturing process because it was not necessary—it merely performed a simple mechanical proof-of-concept demonstration that Brandt's lower drive housing could be reversed. *See* Appx1065 ("JUDGE JESCHKE: . . . And it's kind of a, it's more of kind of a proof of concept, if you will. Is that the way we should think of this? MR. BREGMAN: Yes. That's exactly right, Your Honor."). And Brunswick fully achieved its goal; Brunswick's proof-of-concept test was entirely successful. Appx752-753; Appx2613-2615. Volvo's assertion that Brunswick attempted and failed to manufacture a completed drive is inconsistent with the record.

Brunswick's proof-of-concept experiment was unnecessary to the Board's decision, but if it is relevant at all, it confirms the ease of modifying Brandt to include the pulling-propeller arrangement taught by Kiekhaefer.

### E. Volvo has no basis for its accusation that the Board's findings were "preordained."

Volvo's brief twice refers to "the Board's preordained obviousness determination." Volvo Br. 25 n.2; *see also id.* at 55 ("[T]he Board's obviousness conclusion was preordained[.]"). The meaning of Volvo's assertion is less than perfectly clear, but to the extent that Volvo intends to accuse the Board of reaching a "preordained" outcome for an improper reason, rather than impartially considering the parties' evidence and arguments, it is an accusation that is unsupported by the record.

No evidence in the record suggests, in any way, that the Board's obviousness determination was "preordained" or otherwise made for an improper reason. To the contrary, as the Board's lengthy opinion demonstrates, the Board engaged in a thorough analysis, reviewed the extensive evidence, and made an obviousness determination supported by substantial evidence.

* * *

Substantial evidence supports the Board's findings that a skilled artisan would have had a motivation to combine Kiekhaefer's pulling-propeller arrangement and

Brandt's stern drive and a reasonable expectation of success in doing so. Volvo fails to demonstrate any error in the Board's analysis.

## II. Substantial Evidence Supports the Board's Analysis of Secondary Considerations.

Nor does Volvo demonstrate any error in the Board's analysis of secondary considerations. The Board first determined that Volvo was not entitled to a presumption of nexus and did not show nexus apart from the presumption. Appx65-71. The Board also found, in the alternative, that even if Volvo had shown nexus, "[Brunswick's] strong evidence of obviousness outweighs [Volvo's] objective evidence of nonobviousness." Appx88.

Both findings are supported by substantial evidence, and this Court can affirm on either ground.

### A. Substantial evidence supports the Board's findings regarding a lack of nexus.

Nexus is the less record-intensive ground for affirmance. It was addressed first by the Board and (as the Board noted) virtually ignored by Volvo in its briefing below. Appx66; Appx68.

#### 1. Substantial evidence supports the Board's finding that Volvo was not entitled to a presumption of nexus.

A patentee is entitled to a presumption of nexus "when the patentee shows that the asserted objective evidence is tied to a specific product" and shows that the product (1) "embodies the claimed features" and (2) "is coextensive with them."

*Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (quoting *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018)).

Although Volvo attempted to show that both its product—the "Forward Drive"—and Brunswick's product—the "Bravo Four S"—embodied the '692 Patent, Volvo failed to make any showing that either product was "coextensive" with the claims.

#### a. Substantial evidence supports the Board's finding that Volvo failed to satisfy its burden to prove coextensiveness.

Volvo's entire argument regarding the presumption of nexus was limited to stating (1) "Volvo Penta's Forward Drive is a commercial embodiment of the '692 Patent and coextensive with the claims," (citing Appx4040 at ¶ 51); and (2) "The design of the Forward Drive has not fundamentally changed since its launch in 2015," (citing Appx4493 at ¶ 9). Appx625.

As the Board recognized, the only evidence cited by Volvo offers no support for the proposition that the Forward Drive is "coextensive with the claims." Appx66. "Dr. Winkel . . . addresses why the Forward Drive embodies the claims, but does not even mention, let alone provide testimony supporting Patent Owner's conclusion regarding, the *separate* coextensiveness requirement." Appx66.[5]

[5] The Board also noted that Volvo's conclusory argument bordered on impermissible incorporation by reference. Appx66.

The Board was correct. Dr. Winkel's declaration states, "It is my opinion that that the Forward Drive shown below (and described in the materials I reviewed) embodies each of the claims of the '692 Patent." Appx4040 (Ex. 2027 ¶ 51). The cited paragraph says nothing about whether the Forward Drive is "coextensive" with the claims.

Volvo committed the same error regarding the Bravo Four S, relying on expert testimony that the Bravo Four S "embodies . . . the claims," Appx4086, as evidence that the Bravo Four S is coextensive with the claims. *See* Appx68 ("Dr. Winkel . . . addresses why the Bravo Four S embodies the claims, but Dr. Winkel does not even mention, let alone provide testimony supporting Patent Owner's conclusion regarding, the *separate* coextensiveness requirement.").

On appeal, Volvo makes exactly the same mistake that it made before the Board. It cites the same evidence—paragraph 51 of its expert's declaration—and again asserts (incorrectly and without any explanation) that this paragraph is evidence that the Forward Drive "was coextensive with the claims." Volvo Br. 55 (citing Appx4040). Volvo fails to even acknowledge, much less refute, the Board's explanation that this testimony addresses only whether the products embody the claimed features, not whether the products are coextensive with them. Appx66.

The Board did not "dismis[s] Dr. Winkel's testimony," as Volvo suggests. Volvo Br. 56. The Board reviewed the testimony and recognized that it offered no

support for the proposition for which Volvo cited it. Appx66-68. Volvo demonstrates no error in this analysis.

Under this Court's precedent, whether the products embody the claimed features and whether the products are coextensive with them are separate requirements for the presumption of nexus. *Fox Factory*, 944 F.3d at 1373. But as it did before the Board, Volvo continues to confuse the separate requirements. *See, e.g.*, Volvo Br. 56 ("[T]he Board ignored Brunswick's own concession that Volvo Penta's Forward Drive is an embodiment of the '692 Patent."); *see generally* Volvo Br. 56-57 (arguing that evidence of "embodiment" somehow shows error in Board's coextensiveness findings). The Board found that Volvo failed to demonstrate coextensiveness and thus that Volvo was not entitled to a presumption of nexus. Volvo fails to demonstrate error in this finding.

**b. Although it is unnecessary to the Board's decision, substantial evidence supports the finding that the Forward Drive is not coextensive with the '692 patent.**

The finding that Volvo failed to demonstrate coextensiveness—an issue on which it bore the burden of proof, *Fox Factory*, 944 F.3d at 1373 (discussing what "the patentee [must] sho[w]")—is dispositive of the presumption of nexus. Although the Board went further and found that "the Forward Drive is *not* coextensive with the claims," Appx66-67, this finding was unnecessary to the conclusion that the presumption of nexus does not apply. The Board's finding was

supported by substantial evidence, and even if it was not, any error in the finding was harmless because the finding was necessary.

As the Board noted, Volvo "expressly stated, in an issue of 'Volvo Group magazine'" published years before the issuance of the '692 patent "that the Forward Drive 'includes several patented features that make the drive stand out,' such as exhaust-related features, which are not claimed in the '692 patent." Appx67 (quoting Appx1735).

This evidence—assertions by Volvo about the features unclaimed in the '692 Patent—refutes coextensiveness: "In light of the patentee's own assertions about the significance of the unclaimed features, no reasonable fact finder could conclude that these features are insignificant." *Fox Factory*, 944 F.3d at 1375. Substantial evidence supports the Board's finding that the Forward Drive contains "several patented features" unrelated to the '692 patent "that make the drive stand out" and thus that the drive is not coextensive with the '692 patent. Appx67.

**c. Volvo's reliance on *Oren Technologies* is misplaced.**

Volvo relies heavily on *Oren Technologies, LLC v. Proppant Express Investments LLC*, No. 2019-1778, 2021 WL 3120819 (Fed. Cir. July 23, 2021) (per curiam), Volvo Br. 58-60, but its reliance is misplaced.

In *Oren*, unlike here, the patentee satisfied the requirement of coextensiveness by proving "that the product is essentially the claimed invention." 2021 WL

3120819, at *6 (quoting *Fox Factory*, 944 F.3d at 1374); *see also Fox Factory*, 944 F.3d at 1374 ("Although we do not require the patentee to prove perfect correspondence to meet the coextensiveness requirement, what we do require is that the patentee demonstrate that the product is essentially the claimed invention.").

Volvo's argument is, in effect, that *Oren Technologies* eliminated the coextensiveness requirement and overruled *Fox Factory sub silentio*. Volvo is incorrect. In truth, *Oren* merely recognizes that once it is established that a product both embodies *and* is coextensive with the claims (which Volvo failed to do here), the challenger bears the burden of rebutting the presumption of nexus. *Oren* offers no support to Volvo.

Because Volvo did not satisfy the coextensiveness requirement, it was not entitled to the presumption of nexus. Volvo fails to show that the Board's finding was not supported by substantial evidence.

#### 2. Substantial evidence supports the Board's finding that Volvo failed to prove nexus without the presumption.

The Board acknowledged that even without the presumption, "the patent owner is still afforded an opportunity to prove nexus by showing that the evidence of secondary considerations is the 'direct result of the unique characteristics of the claimed invention.'" *Fox Factory*, 944 F.3d at 1374 (quoting *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996)). Substantial evidence supports the Board's finding that Volvo failed to carry its burden.

As the Board noted, Volvo provided only cursory briefing on this issue. Appx71 (noting Volvo's "two-sentence discussion of the issue"); *see also* Appx68 (quoting Appx626, which contains Volvo's limited analysis).

The Board correctly observed that Volvo failed to "actually identify the 'unique characteristics' of the claimed combination—*i.e.*, the 'merits of the claimed invention'—that allegedly lead to the objective evidence here." Appx71 (citations omitted). After reviewing the evidence cited by Volvo, the Board found that Volvo "has not adequately identified or explained how the specific 'capabilities' of the Forward Drive sought to be matched by Petitioner (whatever they may be) result from or are required by the claims in the '692 patent." Appx71-72. In other words, Volvo's bare citation—without argument or explanation—was insufficient to satisfy its burden of proof on the issue of nexus. The Board's finding is supported by substantial evidence.

On appeal, Volvo offers only a brief and conclusory argument, asserting without citation to the record: "Volvo Penta specifically identified a forward-facing stern drive with an offset steering axis as the unique characteristics of the claimed invention, and it was these characteristics among others which Brunswick recognized were desirable and sought to copy." Volvo Br. 62. Because Volvo's brief provides no record citation, Brunswick cannot fully respond to this argument

because it does not know where, in the record, Volvo contends that it made this identification. Volvo Br. 62.

The Board concluded (and provided supporting citations) that Volvo failed to identify these unique characteristics in its arguments below. Appx68 (citing Appx626). And the only "evidence" cited by Volvo, Appx4520 (Exhibit 2039 at 2), merely notes that Brunswick sought "capabilities that match the Volvo Penta Forward Drive." The exhibit never explains what those "capabilities" might be. As the Board recognized, this exhibit is not evidence that Brunswick sought to copy the specific "capabilities" claimed by the '692 patent.

To the extent that Volvo relies on a purported disclosure of unique characteristics in its Sur-reply, this disclosure came far too late. *See* Appx72 n.19. And as the Board noted, Volvo failed to link this argument "with any evidence of record as to, for example, how one of ordinary skill in the art would have understood the disclosures discussed." Appx72 n.19.

Before the Board, Volvo's two-sentence argument failed to carry its burden to prove nexus. Substantial evidence supports the Board's finding.

* * *

Because substantial evidence supports the Board's finding that Volvo failed to demonstrate nexus—either through the presumption or otherwise—this Court can affirm without considering the evidence of secondary considerations.

### B. Substantial evidence supports the Board's weighing of the secondary considerations evidence.

The Board found, in the alternative, that even if Volvo had shown nexus, "[Brunswick's] strong evidence of obviousness outweighs [Volvo's] objective evidence of nonobviousness." Appx88. Volvo fails to show that this finding is not supported by substantial evidence, and this Court can affirm on this basis.

#### 1. The Board adequately explained its analysis of secondary considerations.

Volvo first raises a procedural point, complaining that the Board's analysis—which described factors as entitled to "some weight," (Appx78, Appx81, Appx83); "very little weight," (Appx85, Appx86, Appx88); and "some, but not considerable weight" (Appx82)—failed to provide an adequate explanation for its decision. Volvo Br. 42-44.

This Court has repeatedly held that it "do[es] not require perfect explanations" from the Board and "may affirm the [Board's] findings 'if [the Court] may reasonably discern that it followed a proper path, even if that path is less than perfectly clear.'" *In re Nuvasive, Inc.*, 842 F.3d 1376, 1382 (Fed. Cir. 2016) (quoting *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015)).

Here, the Board applied a multi-factor test in analyzing the secondary indicia of nonobviousness, and the Board's decision fully explains the relative weight that it accorded to the each of the factors (and why). Indeed, the Board's findings mirror

how this Court and other courts have explained their analysis of secondary considerations. *E.g., Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1346 (Fed. Cir. 2019) ("Having considered DRL's arguments, we conclude that the court did not clearly err in giving some weight to Indivior's evidence."); *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1220 (Fed. Cir. 2016) ("[T]he Board should have given some weight and consideration to ClassCo's evidence of praise and commercial success.").

It is unclear what level of detail would satisfy Volvo. *See* Volvo Br. 46 (speculating that "by 'some weight,' the Board [may] mea[n] 'no weight'"). Analyzing secondary considerations is not a mathematical inquiry, and the Board fully explained the relative weight that it gave to each of the factors and the reasoning behind its analysis. Volvo's complaints about the adequacy of the Board's explanation are meritless.

**2. Volvo fails to show any error in the Board's analysis of secondary considerations.**

"The existence and weight assigned to any objective indicia of nonobviousness are factual considerations that [the Court] review[s] for substantial evidence." *Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1222 (Fed. Cir. 2022). This Court "give[s] deference to a lower court's factual findings regarding evidence of secondary considerations." *Bristol-Myers Squibb Co. v. Teva Pharms. USA, Inc.*, 752 F.3d 967, 978 (Fed. Cir. 2014). Although Volvo disagrees with the Board's

factual conclusions about the weight to be given to various factors, it fails to show error under the deferential standard of review.

Volvo contends, for example, that the Board should have treated copying as "strong evidence of non-obviousness." Volvo Br. 46. But despite finding evidence of copying, the Board also noted Brunswick's evidence about "differences as to the five features alleged by Dr. Winkel as common to both products." Appx202; *see also id.* (expressing skepticism about the side-by-side comparison but relying on Brunswick's internal documents). And the Board found evidence of statements by industry commentators alleging similarities as "less persuasive" than other evidence. Appx203. The Board concluded that the evidence of copying was "entitled to some weight of nonobviousness." Appx203.

Similarly, the Board found "at least some commercial success," Appx78, and credited Brunswick's evidence that undercut Volvo's evidence of commercial success. Appx205 (discussing lackluster sales figures demonstrating lack of actual commercial success). The Board therefore properly gave this favor "some weight." Appx81. Volvo believes that this factor should have been "compelling," but it fails to show—or even argue—that the Board's factual finding giving this factor less weight was unsupported by substantial evidence.

The same is true for industry praise. With respect to this factor, the Board noted, for example, that "many statements in the [Miami International Boat Show]

award submission documents discuss unclaimed features," and thus gave the award "some, but not considerable, weight." Appx83. Volvo notes that "the objective evidence need not be limited solely to the allegedly novel aspect(s)." Volvo Br. 48. But here, the problem is not that Volvo's evidence went beyond the novel aspects—the evidence specifically concerned unclaimed aspects. In any event, Volvo fails to show error regarding the weight the Board gave to this factor under the substantial evidence standard.

And the Board fully explained why it gave "very little weight" or "little weight" to Volvo's evidence regarding the other secondary considerations. *See* Appx83-88. For instance, there is no error in the Board according "little weight" to Brunswick's supposed failure to enter the market until after Volvo launched its drive product because, the Board found, no evidence demonstrated that any failure to enter the market was not due to other factors, such as lack of market demand. *See* Appx87-88.

At bottom, that Volvo disagrees with the Board's weighing of secondary considerations is not a basis for demonstrating that these findings were not supported by substantial evidence. After all, "[i]t is the fact finder's job to assess the probative value of the evidence presented." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1056 (Fed. Cir. 2016); *see also Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996) ("It is within the province of the fact-finder to

resolve these factual disputes regarding whether a nexus exists between the commercial success of the product and its patented features, and to determine the probative value of Pro-Mold's evidence of secondary considerations[.]"). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent the Board's findings from being supported by substantial evidence." *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir. 2006). Volvo cannot show that the Board's findings weighing the evidence of secondary considerations were unsupported by substantial evidence.

The Board considered all of the secondary considerations and explained the weight that it gave to each. Appx72-88. After this thorough analysis, the Board ultimately found that even if Volvo had shown a nexus, its "objective evidence weighs somewhat in favor of nonobviousness," but "[w]hen considering all the evidence of obviousness and nonobviousness together, we find [Brunswick's] strong evidence of obviousness outweighs [Volvo's] objective evidence of nonobviousness." Appx88. This Court reviews this factual finding only for substantial evidence, *Bristol-Myers Squibb*, 752 F.3d at 978, and Volvo has not shown any error by the Board.

* * *

This Court should affirm the Board's finding that claims 1-18 are invalid as obvious based on the combination of Kiekhaefer's pulling-propeller with Brandt's stern drive.

## III. In The Alternative, This Court Should Correct the Board's Claim Construction and Remand.

In the alternative, if the Court agrees with Volvo that the Board erred in holding the claims of the '692 Patent obvious under its claim construction, it should correct the Board's claim construction ruling, reverse the rejection of the first two grounds,[6] and remand for further proceedings.

### A. The Board erred in construing the claims as limited to stern drives.

The Board incorrectly construed the term "drive" in the claims to be limited to "stern drives." *See, e.g.*, Appx17 ("[W]e are persuaded that the 'drive support' limitations and the 'drive housing' limitations recited in each of the independent claims—alone and in combination—would be understood as limiting the claims to improvements involving stern drives"). The Board's construction is not supported by the intrinsic evidence.

Claim 1 recites "a **drive support** mountable to a stern of the boat." Appx377 (emphasis added). Remaining independent Claims 8, 11, 17, and 18 recite similar

---

[6] Based on its incorrect claim construction, the Board rejected the ground of invalidity based on anticipation by Kiekhaefer and obviousness under Kiekhaefer and Stechauner. Appx118.

requirements. *Id.* at Claim 8 (reciting "a **drive housing support** for mounting the drive housing to the boat"); *id.* at Claim 11 (reciting "a **drive housing support** steerably mounting the drive housing to the stern of the boat"); Appx378 at Claim 17 (same); *id.* at Claim 18 (reciting "a **drive housing support** for mounting the drive housing to the boat") (emphases added). No language in the independent claims limits the scope of these drive supports to stern drives.

To the contrary, all marine drives, by definition, are supported by the boats on which they are mounted and thus must have a "drive support" that attaches the drive to the boat. *See* Appx2398 (Volvo's expert agreeing that an outboard drive is supported by a clamp bracket that connects it to the transom (part of the boat)); *see also* Appx2400 ("supports the motor from falling into the water"). And the general definition of "drive housing," according to Volvo's expert, is merely the "the external structure that houses things such as the vertical drive shaft, the propeller shaft." Appx2386; *see also* Appx2840 (agreeing that an outboard motor has a drive housing); Appx2402-2403 (not denying that these features are found on outboard motors).[7]

---

[7] Volvo's expert testified that "drive housing" and "drive support" as used in the claims are limited to stern drives because he erroneously imported limits from the specification into the claims. *See* Appx2390-2391 (opining that "drive housing" is limited to the specific structure illustrated in the figures).

Nor does the specification equate "drive housing support" with a "stern drive." Stern drives are only explicitly described in the "Background" section, where inboard and outboard marine drives are also discussed in equal detail. Appx375 at 1:13-21. The specification acknowledges that "inboard," "outboard" and "inboard/outboard [stern]" are all different types of "marine drives." Appx375 at 1:13-14. In other words, according to the specification, "stern drives" are a distinct type of "drive." The inventor's decision to use "drive," a term that encompasses both outboard and stern drives, in the claims should be respected.

Some structures unique to stern drives are disclosed elsewhere in the specification, but they are neither defined as limiting, described as anything more than a preferred embodiment, nor repeated in the claims (other than claim 16). *See, e.g.*, Appx376 at 3:46-49 ("The drive shaft 114 may be rotated by an input shaft 118 which is coupled to receive drive torque from an engine (not illustrated) housed within the boat 200.").

The specification even states that its embodiments are not restrictive, which provides additional support for a broader reading of the independent claims. Appx375 at 2:19-22 ("It should be understood that both the foregoing general

description and the following detailed description are explanatory only and are not restrictive of the invention as claimed”).[8]

Similarly, the abstract’s reference to “a tractor-type stern drive,” Appx370, only underscores the absence of the phrase “stern drives” from the claims. Appx377. *Compare* Appx370 at Abstract (“tractor-type **stern** drive for a boat” (emphasis added)), *with* Appx377 at Claim 1 (“tractor-type drive for a boat”). The abstract may have focused on a stern drive, but the claims read more broadly. *See Thorner v. Sony Computer Entm’t Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) (“We do not read limitations from the specification into claims; we do not redefine words.”).

In view of this intrinsic evidence, it was improper for the Board to limit the claims to stern drives. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 905 (Fed. Cir. 2004) (rejecting limitation of claims based on exemplary descriptions in the specification and abstract); *Prihma Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1289 (Fed. Cir. 2005) (“We have repeatedly made clear that limitations cannot be imported from the specification into the claims.”).

---

[8] The Board characterized this language as “generic boilerplate” that cannot “expand[] the scope of the invention.” Appx19. But the Board cites *D Three Enterprises, LLC v. SunModo Corp*., 890 F.3d 1042, 1050 (Fed. Cir. 2018), for this proposition. In *D Three*, this Court considered whether generic boilerplate language could be used to support an adequate written description; the Court did not address how such language should be interpreted in claim construction.

Critically, the Board's construction also violates the doctrine of claim differentiation. "[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim*, 358 F.3d at 910. Claim 16 limits the claimed drive to a stern drive, reciting: "The boat of claim 11, further comprising an engine housed within the hull of the boat, and a transmission input shaft extending through a transom of the boat into the gear case **to provide a stern drive**." Appx378 (emphasis added). If the narrower dependent Claim 16 is directed to just stern drives, then the broader Claim 11 (and the other independent claims, which should be interpreted consistently) are not so limited under the doctrine of claim differentiation.

The Board rejected this argument by relying on Claim 16's other limitations, which the Board explained provide the "drive components of the stern drive," the "engine," and the "'transmission input shaft' to provide a more complete 'stern drive' propulsion system." Appx15. But this is an illogical reading of Claim 16, which expressly states that "a stern drive" is only "provide[d]" **after** an engine and transmission input shaft are added.

And crediting the Board's reading of Claim 16, the reference to "drive" in independent claims does not include the engine but merely includes pieces such as the "drive support," "drive housing," and propellers. *See* Appx377 at Claim 1. If

the engine is not part of the claims from which Claim 16 depends, then it could be placed either within the boat hull (as on a stern drive) or attached to the propeller drive (as on an outboard drive). Appx375 at 1:13-21. Either way, the non-engine "drive" components are in the same locations. *See* Appx398-410.

Moreover, Claim 16's use of the specific phrase "stern drive" strongly suggests that references to "drive" should not be limited to "stern drives."

Since there is no indication from the intrinsic evidence that the drive in the independent claims is limited to a "stern drive," there is no need to consult extrinsic evidence to assess the meaning of the claim term. *See Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th, 1285, 1287 (Fed. Cir. 2021) ("If the meaning of a claim term is clear from the intrinsic evidence, there is no reason to resort to extrinsic evidence.") (citing *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1380 (Fed. Cir. 2016) ("Extrinsic evidence may not be used to contradict claim meaning that is unambiguous in light of the intrinsic evidence.")).

The Board recognized this canon of claim construction, Appx20, but the Board misapplied it. The Board rejected Brunswick's claim construction position because Brunswick failed to "provide declarant testimony as to how the 'drive support' limitations, the 'drive housing' limitations, or the term 'drive' generally would have been understood, and d[id] not address Dr. Winkel's relevant declaration testimony," which the Board calls "unrebutted." Appx12-13. But Brunswick did

not need to present testimony to rebut Dr. Winkel because his extrinsic commentary is irrelevant to claim construction where, as here, the intrinsic evidence demonstrates that the claimed drive is not limited to a stern drive. The Board erred in its claim construction.

### B. This Court should vacate the denial of Ground 1 and Ground 2 remand for the Board to consider outstanding issues in view of the proper construction.

The Board's claim construction was the basis for its rejection of the first two grounds of invalidity raised by Brunswick. *See* Appx25 ("Because the independent claims are limited to improvements involving stern drives, and do not encompass, for example, improvements involving outboard propulsion systems, and because Kiekhaefer only discloses improvements involving outboard propulsion systems, we determine, based on the complete record, that Petitioner has not demonstrated by a preponderance of the evidence that claims 1, 11, 17, and 18 are anticipated by Kiekhaefer."); Appx27 ("In the context of this asserted ground, Petitioner continues to rely on Kiekhaefer for all the limitations in independent claim 1."). The Board's rejection of these grounds should be vacated when the claim construction is reversed. The Board would need to address these grounds on remand.

In addition, the Board would also need to consider Volvo's contingent motion to amend, which the Board dismissed as moot after construing the claims as limited to stern drives. Appx116.

If this Court reverses the Board's finding that the claims are invalid as obvious and agrees that the Board erred by construing the claims as limited to "stern drives," then it should remand to the Board to consider these outstanding issues.

## CONCLUSION & PRAYER FOR RELIEF

For these reasons, this Court should affirm the Board's finding that the challenged claims are invalid as obvious in view of Brandt and Kiekhaefer.

In the alternative, this Court should reverse the Board's claim construction, vacate the Board's rejection of Brunswick's first two grounds, and remand to the Board.

Dated: November 21, 2022

Respectfully submitted,

By: */s/ William R. Peterson*

Jason C. White
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
(312) 324-1775
jason.white@morganlewis.com

William R. Peterson
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188
william.peterson@morganlewis.com

Julie S. Goldemberg
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5095
julie.goldemberg@morganlewis.com

***Counsel for Appellee***
***Brunswick Corporation***

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1. This brief complies with the type-volume limitations of Federal Circuit Rule 32(b)(1) because this brief contains 12,633 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

*/s/ William R. Peterson*
William R. Peterson

*Counsel for Appellee*
*Brunswick Corporation*

Dated: November 21, 2022